# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMY W. BIVENS, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 06-CV-263-WDS |
| LARRY TRENT, et al., | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendants' motion for summary judgment (Doc. 20) to which plaintiff has filed a response (Doc. 27) and defendants a reply (Doc. 29).

Plaintiff has been an employee of the Illinois State Police (ISP) from 1984 through the present and is currently a trooper with the ISP. He alleges that in October of 2003 he was assigned to the position of Range Officer for the District 11 range in Collinsville, Illinois, and while there, raised serious environmental concerns with respect to the conditions at the range, including that ISP was not in compliance with regulatory standards concerning lead at the facility. The range is used by both ISP employees and the public at large. In addition, he alleges that school groups often tour the facility.

Plaintiff alleges that he spoke out about his concerns, exercising his protected rights to freedom of speech (not in his official capacity, but as a member of the public) about the dangers posed by the lead present at the facility. The complaint provides that as a result of the lead concerns raised by the plaintiff, the range was closed for a period of approximately nine (9) months for cleaning and to be brought into compliance with legal standards.

He asserts that as a result of his decision to speak out about the public safety issues at the range, the defendants have engaged in retaliation against him, including: subjecting him to different workplace rules than other employees; discipline without justification; refusing to allow him to use his available

benefit time; reassigning him to a less desirable position; interfering with his right to receive benefits; harassment; disclosure of confidential information; and dissemination of false information concerning the plaintiff to his co-workers. Plaintiff seeks recovery for these violations pursuant to 28 U.S.C. §§ 1983 and 1988, including damages, a mandatory injunction directing the defendants to stop the harassment and other illegal activities, and reinstatement by ISP to his full employment duties.

Defendants seek summary judgment on several grounds. Initially, they assert that plaintiff's speech was not protected because it was part of his official duties. In the alternative, the defendants assert that even if his speech was protected, the protected nature of the speech was not clearly established and that they are protected from any liability by the doctrine of qualified immunity. Finally, the defendants assert that plaintiff's claims must fail because he cannot show that a nexus existed between his report about alleged contamination at the range and any alleged retaliatory actions by the defendants.

## SUMMARY JUDGMENT REVIEW STANDARDS

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c): *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Springer v. Durflinger,* 518 F.3d 479, 483-84 (7th Cir. 2008); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See, Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See, id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party

2

and draws all reasonable and justifiable inferences in that party's favor. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See, Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Durflinger*, 518 F.3d at 483 (quoting *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2007)). Further, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*, 475 U.S. 574, 586 (1986) (quoted in *Durflinger*, 513 F.3d at 484). Summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007).

## **DISCUSSION**

To prevail on a First Amendment § 1983 claim, the plaintiff needs to show that "(1) [he] was engaged in constitutionally protected speech; (2) that public officials took adverse actions against [him]; (3) that the adverse actions were motivated at least in part as a response to the plaintiff's protected speech. *Durflinger*, 518 F.3d at 483 (citing *Mosely v. Bd. of Educ. of ChicagoI,* 434 F.3d 527, 533 (7th Cir. 2006)).

Under § 1983, defendants are entitled to qualified immunity for claimed money damages for discretionary actions if the defendant's conduct does not violate any clearly-established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The test is purely legal, without regard to the subjective motivations of the defendant. *Id.* at 818-19; *Mitchell v. Forsyth*, 472 U.S. 511(1985); *Davis v. Scherer*, 468 U.S. 183, 191(1984). Officials do not lose the immunity merely

because they violate some statutory or administrative provisions of state law. Davis 468 U.S. at 194.

In order for a plaintiff to defeat a qualified immunity claim, he must prove that defendants have violated a constitutional right that was clearly established at the time of the alleged misconduct. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995). The burden of establishing the existence of such a clearly established constitutional right remains with plaintiff. 44 F.3d at 570 *citing Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988). Plaintiff must point out a closely analogous case that establishes that he had a right to be free from the specific conduct alleged to violate the general constitutional right at issue. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). Plaintiff must also establish that the alleged violated rights were so clear that a reasonable official would understand that what he is doing at the time violates the right. *McGrath*, 44 F.3d at 570; *See also, Anderson v. Creighton*, 483 U.S. 635 (1987).

Initially, defendants assert that plaintiff's speech was not protected speech because he was speaking in his official capacity, not as a member of the public at large. Defendants assert that plaintiff's speech was part of his official responsibilities because he was in charge of the firing range, and his responsibilities included the cleanliness and safety of those who used the range. Defendant's assert that the plaintiff had undertaken the job of cleaning the range, was commended for that action, that his concerns about the lead contamination were only raised within a work environment, and that reporting potential hazards at the range was part of his duties. Plaintiff asserts that his job duties, as outlined in Defendant's Ex. 1 (Doc. 20), did not include bringing concerns to his superiors' attention.[1]

---

[1] Exhibit 1 includes a memorandum from defendant Master Sergeant R.W. Hayes to plaintiff dated September 29, 2003, which sets forth plaintiff's duties. Notably, the memorandum specifically provides that it "is in no way all inclusive" but is designed "to ensure that there are no misunderstandings on certain aspects of the job." Included in the list of duties are, inter alia: "2. Ensure the range facilities are kept clean and in an orderly fashion. 3. Prepare all the paperwork associated with the weaponry and qualifications held within the district and forward it to Springfield as required. . . 5. Other duties as assigned."

In *Vose v. Kliment*, 506 F.3d 565 (7th Cir. 2007), a First Amendment public employee (police officer) case, the Seventh Circuit discussed the applicable standard and limitations as to whether the First Amendment protects a public employee's speech.

> The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern under certain circumstances. *Garcetti v. Ceballos,* 126 S.Ct. [1951,] 1957 [(2006)]; *see, e.g. Connick v. Myers,* 461 U.S. 138, 147-48 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "[W]hen public employees make statements to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 126 S.Ct. at 1960.

*Vose*, 506 F.3d at 569. Therefore, the Court must determine what speech was at issue, and then look to the actual duties of the plaintiff in order to determine if this speech was part of his official responsibilities or whether he spoke as a private citizen.

> Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description. *See* [*Garcetti*, 126 S.Ct.] at 1962-63 (explaining that formal job descriptions rarely resemble the actual duties of an employee for First Amendment purposes).

*Vose*, 506 F.3d at 569.

The record before the Court reveals that the plaintiff, while District 11 range officer, was initially supervised by defendant Master Sergeant Hayes, then later by Master Sergeant Lennix (Bivens depo. at p. 33). Plaintiff kept the range neat, orderly, organized and professional, especially in comparison to the previous range officer. Plaintiff received positive job evaluations for his work on the range. Plaintiff acknowledged that as range officer, he was responsible for all aspects of the range, including learning programs, being certified, having knowledge of the range, being an

5

authority, qualifying individuals, keeping records of those who qualified, organizing the range, and general clean-up. (*Id*. at 20-24). He was also responsible for making sure that the range was safe at all times (*Id.* at 20, 62-63).

Plaintiff had started to feel ill, and in February of 2004 first spoke to Master Sergeant Whitley, who was supervisor at the Pawnee Range for ISP. Plaintiff requested a blood test and described his symptoms, which included joint aches, fatigue, flushed and headaches (*Id.* at 34). Although plaintiff was to report to his direct supervisor and the District office, he often received range-related instructions from Pawnee Range, which, as detailed in plaintiff's deposition, was the "big" range. Pawnee range would send out instructions and directives to other ranges about range operations (*Id*. at 35). Plaintiff did not believe that Whitley talked to any of the defendants about plaintiff's situation (*Id.* at 39-40).

After that, plaintiff details multiple conversations he had with defendant Hayes, the first concerning lead levels occurred in the third week of February of 2004 (*Id.* at 40). Plaintiff told Hayes of his symptoms and that he had talked with Whitley. Hayes then sent a memorandum to defendant Keevan and suggested that plaintiff have a lead test (*Id.* at 42-45). Keevan was concerned and asked plaintiff to get a blood test. (*Id.* at 44). Plaintiff next talked with his supervisor after he had his blood drawn, and had a 47 lead level. (*Id.*at 45). After that, he told defendant Hayes that the room which was used as a gymnasium for control and arrest tactic certification was not safe because of toxic lead (*Id.* at 48-49).

Plaintiff detailed non ISP groups which would use the facility, including school groups, police trainees from Southwestern Illinois, hunters who would come to sight-in their rifles, and ISP family who might visit on family days.

Plaintiff reported his elevated blood lead levels in a memorandum dated March 14, 2004, to

6

his supervisors defendant Lennix and Hayes (*Id.* at 45, 47-48), and filed a grievance on March 18, 2004. (*Id.* at 53-54). At that same time, Hayes sent on information about range concerns to defendant Keeven, and consulted with the Pawnee Range supervisor. Plaintiff was advised to wear protective gear when on the range. (*Id.* at 166; Hayes depo. at p. 69-70; Keeven depo. at p. 38-39). Plaintiff's grievance was denied on March 19, 2004, but he was asked for suggestions on how to proceed. Plaintiff recommended cleaning the range and installing a filtration system (Ex. 8 to Doc. 20).

Plaintiff went to a board certified neurologist of his choosing, Dr. Patrick Hogan, on March 23, 2004, who found plaintiff to be normal. (Depo. Hogan at 5-8). Dr. Hogan had initially determined that plaintiff could not return to work (*Id*. at 9-10), but then received the evaluation of plaintiff's lead levels which had decreased from 47 micrograms per deciliter to 1 microgram per deciliter in less than thirty days (*Id*. at 9-10). Plaintiff had, at approximately that same time, been advised by his physician, Dr. David Schrieber, that he should not return to work until April 7, 2004 (Ex. 10 to Doc. 20). On March 24, 2004, defendant Keeven or defendant Hayes called Dr. Hogan, who then amended his order that plaintiff could return to perform desk work. (Ex. 12). Plaintiff was called by defendant Hayes and advised that he should return to work on March 26, 2004. (*Id.*) Plaintiff did not return to work until April 19, 2004, when his personal physician released him to light duty. (Ex's 14-18). Plaintiff was examined by an independent physician, Dr. Peeples, on May 10, 2004, who determined plaintiff could return to work as long as he was not exposed to lead. (Bivens depo at 171-72). In June of 2004, plaintiff was diagnosed by Dr. Schrieber as having "cerebral deficits" (Ex. 20), and plaintiff was off work, using benefit time, until January of 2005.

The District 11 range was reopened in November of 2004, but plaintiff did not return to work. As of November 18, 2005, plaintiff did not work but continued to be paid. After that date,

plaintiff has not returned to work, and is no longer being paid. (Ex. 2).

Reviewing the facts in Biven's favor, the Court must, nonetheless, find that the plaintiff's speech was simply related to his employment as an Illinois State Police officer in charge of District 11's firing range. His job duties specifically included cleaning and safety. His role as a police officer, in general, concerns issues of public safety. His speech, in this case, was directly and inextricably related to his official duties at the range. Because he was responsible for the operations of the range, his speech regarding the conditions on that range was "made pursuant to his official responsibility, and not as a private citizen. . ." *Vose,* 506 F.3d at 570. Under *Garcetti*, 126 S.Ct. at 1958, "The first [inquiry] requires determining whether the employee spoke as private citizen on a manner of public concern." (*Quoted in Voss*, 506 F.3d at 569.) Therefore, the Court **FINDS** that the plaintiff's speech was not protected by the First Amendment because it was clearly related to and part of his official duties, and that he was not speaking as a private citizen. *Vose*, 506 F.3d at 569.

Accordingly, the Court **GRANTS** defendants' motion for summary judgment. Judgment is entered in favor of defendants Larry Trent, Jay Keeven, Diane Rotter, Mark Beagles and Roger Hayes, and against plaintiff, Jimmy W. Bivens on all claims. Each party shall bear its own costs. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   April 18, 2008.**


                                        s/ WILLIAM D. STIEHL
                                          **DISTRICT JUDGE**